# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ROBERT L. JOHNSON, # 123451, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION 05-0019-BH-C |
| DEBRA BROWN, et al., | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that this action be dismissed with prejudice, as frivolous prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[1]

**I. Complaint (Doc. 7).**[2]

Plaintiff filed a complaint, in barely legible handwriting, against defendants Debra

---

[1] Plaintiff has filed numerous actions, most of which were filed in the United States District Court for the Northern District of Alabama. The Court discovered only one on the electronic docket that was dismissed under 28 U.S.C. § 1915(e)(2)(B), *Johnson v. Spann, et al*, CA 04-03200-VEH-TMD (N.D. Ala. July 7, 2006).

[2] The complaint before the Court is a superseding amended complaint. *Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982). The original complaint was not on this Court's complaint form; therefore, the Court ordered an amended complaint be filed.

Brown and Robert Leatherwood, officers at Holman Correctional Facility.  Plaintiff's specific claims against defendant Brown is for reading his personal mail and writing him an incident report and a disciplinary.  Plaintiff's specific claim against defendant Leatherwood is for destruction of plaintiff's legal mail - a petition for the state writ of habeas corpus and a petition for the writ of certiorari to the "United States Court of America."

The following is a description of plaintiff's allegations as the Court can best discern them, which includes information from disciplinary reports, one of which is attached to the original complaint.  Plaintiff was charged with threats, a Rule 44 violation, based on conduct that occurred on November 9, 2004 at 4:25 p.m., when plaintiff was being escorted out of the shift commander's office.  (Doc. 7 at 11, attached disciplinary report).  According to Officer Ammons, plaintiff said, "If she says anything else to me. I'm going to stick her."  The officer said, "Who, Officer Dortch?"  Plaintiff responded, "Yeah, y'all find her dead, I'm not playing."  Plaintiff disagreed with this statement and said that he had gone to the commander's office to report that Officer Dortch said that she would bust his head.  Plaintiff said that if the officer hit him with the stick, he would take it from her and beat her brains out.

Plaintiff was found guilty of making threats to Officer Dortch and received a sentence of 45 days in disciplinary segregation.  But the disciplinary was disapproved, because 24-hour notice had not elapsed before the disciplinary hearing.  While plaintiff was being held in segregation, defendant Leatherwood went through plaintiff's personal

property that had been left in population looking for any reference to Officer Dortch, and in the process allegedly destroyed plaintiff's legal work to be sent to the federal and state courts and read his personal mail which included a letter that plaintiff had written to the Salvation Army's Missing Person Agency in California trying to locate his sister, Debra Brown.

However, an officer at Holman is also named Debra Brown. The letter was shown to defendant Debra Brown outside of plaintiff's presence, and she wrote an incident report and gave it to Captain Bishop. Captain Bishop questioned plaintiff in his office, but plaintiff refused to answer any questions about his family and his personal mail.

Plaintiff was charged with a disciplinary violation by defendant Leatherwood for violating Rule 62, intentionally creating a safety, security, and health hazard. (Doc. 1 at 5, attached disciplinary report). Plaintiff was found guilty and received a sentence of confinement to disciplinary segregation for 45 days and the loss of store, visitation, and phone privileges for 45 days. Then, plaintiff filed a habeas corpus proceeding in Escambia County for the destruction of his legal work and an invasion of privacy when his legal and personal mail was opened and read.

A copy of the first page of the Rule 62 violation disciplinary report was attached to plaintiff's original complaint. It relates that the objectionable conduct occurred on November 9, 2004 at 7:00 p.m., when defendant Leatherwood found in plaintiff's personal property a letter that was sent by plaintiff to the Salvation Army Missing Persons Agency requesting the address of Debra Brown, which had been returned by that

3

organization.  In the Rule 62 disciplinary proceeding, plaintiff propounded questions to defendant Leatherwood.  (Doc. 7 at 17).  Officer Leatherwood, in response to plaintiff's question about who gave him permission to search plaintiff's personal property and to read plaintiff's mail, stated, "I was told to search [plaintiff's] personal property and to look for anything with COI Dortch's name on it because I was told [plaintiff] was locked up for stalking COI Dortch."  (*Id.* at No.1).  Defendant Leatherwood denied destroying any legal mail.  (*Id.* at No. 2).  Officer Leatherwood believes that the "Debra Brown" in the letter is not plaintiff's sister because plaintiff did not list a sister by that name in his file.  (*Id.* at No. 3).

For relief, plaintiff requests a temporary injunction and $30,000 in compensatory damages and punitive damages and payment for destroying his legal mail and book.

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing plaintiff's complaint (Doc. 7) under 28 U.S.C. § 1915(e)(2)(B).[3]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from

---

[3]The predecessor to this section is 28 U.S.C. § 1915(d).  Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered.  *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir.), *cert. denied,* 534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  *Bilal,* 251 F.3d at 1348-49.

suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.* Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *see Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)). "The need at the pleading stage for allegations [to show plausibility] . . . reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1966 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. "[L]abels and conclusions and a formulaic recitation" of the cause of action's elements are insufficient for grounds for entitlement to relief. *Id.* Dismissal for failure to state a claim is also warranted when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint. *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007).

**III. Discussion.**

    **A. Claims Against Defendant Debra Brown.**

Plaintiff complains that defendant Brown read his personal mail and wrote him an incident report and a disciplinary. The allegations reflect that defendant Brown was

shown a letter that plaintiff had written to the Salvation Army Missing Persons Agency in California trying to locate Debra Brown, who plaintiff stated was his sister.  This letter was returned to plaintiff with a response that no individual was found.  Defendant Leatherwood found the letter in plaintiff's "personal property" while plaintiff was locked up for stalking Officer Dortch.

The Court finds that plaintiff's letter was non-legal mail. *Cf. Guajardo v. Estelle,* 580 F.2d 748, 758 (5th Cir. 1978) (holding that inmate correspondence with the courts, prosecuting attorneys, identifiable attorneys, and parole or probation officers is legal mail not subject to regular inspection), *overruled on other grounds by Thornburg v. Abbott,* 490 U.S. 401, 423-24 (1989).  As a personal, non-legal letter, it was perused or reviewed when it was inspected in the prison's outgoing mail and then in the incoming mail.  *See Powe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999) ("[P]rison security 'is a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights[]' . . . . Accordingly, we have upheld regulations authorizing prison officials to inspect incoming or outgoing non-legal mail for contraband."); ADOC Admin. Reg. 448, V, F & G (authorizing inspection of mail for contents) (enacted Dec. 19, 2005; available on ADOC website); former Admin Reg. 303, XII (same import).  Plaintiff, therefore, had no expectation of privacy in the contents of this letter.

Defendant Leatherwood obtained this letter in a search of plaintiff's "personal property" in population.  This search did not violate plaintiff's Fourth Amendment rights because he had no expectation of privacy in his "personal property."  *Hudson v. Palmer,*

6

468 U.S. 517, 526, 104 S.Ct. 3194, 3200 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."); *see United States v. Harmon,* 2008 WL 90153 (11th Cir. Jan. 10, 2008) (unpublished) (affirming the motion to suppress on the basis of *Hudson* because the pretrial detainee had no expectation of privacy in the contents of his notepad found in his cell).

Therefore, when defendant Leatherwood gave the letter to defendant Brown for her review, no violation of plaintiff's constitutional rights occurred. Plaintiff's claim against defendant Brown for reading his letter is, therefore, frivolous.

Next, plaintiff complains about defendant Brown writing him an incident report and a disciplinary. The incident report was written and given to Captain Bishop, and it led to a disciplinary being written for a Rule 62 violation, intentionally creating a safety, security, or health hazard. Plaintiff was found guilty of the disciplinary and was sentenced to 45 days in disciplinary segregation and 45 days' loss of store, visitation, and phone privileges.

The writer of the disciplinary appears to be defendant Leatherwood even though plaintiff charges defendant Brown with writing the disciplinary. *(*Doc. 1 at 5, Rule 62 disciplinary report)*.* That is, in the attached description (Doc. 7 at 9)*,* plaintiff states that defendant Leatherwood wrote him the disciplinary, and he questioned defendant

Leatherwood why he wrote the disciplinary instead of defendant Brown (*id.* at 17).

The claim against defendant Brown for writing the incident report lacks constitutional magnitude in this instance because the underlying disciplinary does not reflect a violation of the Constitution.  In the disciplinary case of  *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), the Supreme Court found that there was no right based directly on the Due Process Clause not to be placed in disciplinary segregation and that there was no state-created liberty interest to be free from disciplinary segregation when an inmate challenged his 30-day segregation sentence based on a due process violation.  *Id*. at 487, 115 S.Ct. at 2302.  In concluding that no liberty interest was implicated by placement in disciplinary segregation, and thus no due process was required, the Court stated its holding was a return to the due process principles of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963 (1974), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532 (1976), that required an inmate to suffer a "grievous loss" before a liberty interest would be found.  *Sandin*, 515 U.S. at 480-83, 115 S.Ct. at 2298-2300.  The *Sandin* Court ruled that future liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 480, 484, 115 S.Ct. at 2298, 2300.  The Court concluded confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, was the type of discipline a prisoner should expect as an

incident to his criminal sentence, and "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485-86, 115 S.Ct. at 2301.

Based on a reading of the Constitution, the Court finds the Constitution does not grant an inmate a right in visitation, store, and telephone privileges. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment two-week loss of commissary privileges); *Walker v. Loman,* 2006 WL 3327663, at *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest) (unpublished). And the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone and visitation privileges. *Dumas v. State*, 675 So.2d 87, 88 (Ala. Crim. App. 1995).

An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of

9

discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id.* at 475, 485, 115 S.Ct. at 2296, 2301.

The ultimate result of the incident report was a disciplinary sentence that did not deprive plaintiff of a constitutional right. Therefore, the act of writing a incident report did not result in a constitutional deprivation. Based upon the foregoing reasons, the undersigned finds that the claim against defendant Brown for writing the incident report is frivolous. Considering that defendant Brown did not write the disciplinary, the claim for writing the disciplinary is frivolous. *See Battle v. Central State Hosp.,* 898 F.2d 126, 130 n.3 (11th Cir. 1990) ("[A]llegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal as baseless.").

### B. Claims Against Defendant Robert Leatherwood.

The claims against defendant Leatherwood are for destruction of plaintiff's petition for the state writ of habeas corpus and the petition for the writ of certiorari to the United States Supreme Court. Plaintiff complains that "all o[f] my legal work were destroyed by these[e] officers carelessness." (Doc. 7 at 9). Defendant Leatherwood maintains that he did not destroy plaintiff's legal mail. (Doc. 1 at 17 no. 2).

In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984), the United States Supreme Court held that the deprivation of property by persons acting under color of state law does not constitute a deprivation without due process of law when a predeprivation hearing is impractical and there is available an adequate postdeprivation remedy at the time of the deprivation. *Id.* at 532-33, 104 S.Ct. at 3203-04. The *Hudson* Court reasoned

that impracticality occurs when the loss of property occurs as a result of a "random, unauthorized act by a state employee," *id.* at 532, 104 S.Ct. at 3203 (quoting *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916 (1981), *overruled on other grounds Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986)), because it is impossible for the State to know beforehand of the deprivation, negligent or intentional, and to provide a predeprivation hearing prior to the loss, *id.* at 533, 104 S.Ct. at 3203. Some postdeprivation remedies that have satisfied due process are administrative procedures, *Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1916-17, or ordinary state tort litigation procedures, *Hudson*, 468 U.S. at 535-36, 104 S.Ct. at 3204.

Based on the allegations, the actual destruction, once the search was underway, was random and unauthorized for which a pre-deprivation hearing was impractical. Therefore, in order for plaintiff's due process claim to be reviewable in this Court, the plaintiff must establish that there was no adequate postdeprivation procedure available to him at the time of the deprivation. *See Tinney v. Shores,* 77 F.3d 378, 382 n.1 (11th Cir. 1996) (finding that plaintiffs' claim failed when they argued the violation was complete at the time of the deprivation because they failed to address the availability of an adequate postdeprivation remedy).

Plaintiff, however, will not be able to establish that an adequate postdeprivation remedy was unavailable to him at the time of the deprivation. Claims for the loss of property incurred at the hands of Alabama state agencies or their employees may be presented for compensation to the Alabama Board of Adjustment pursuant to Alabama

Code §§ 41-9-60, *et seq.* And a state employee may be personally liable to an inmate in an ordinary tort action. *Milton v. Espey*, 356 So.2d 1201 (Ala. 1978); ALA. CODE § 6-5-262 (1975).

It is not necessary that the postdeprivation remedy be available to plaintiff at the present time to determine whether the deprivation was with or without due process. *See Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1917. It is only required that an adequate postdeprivation remedy have been available to plaintiff when the deprivation occurred. *Id.* Because an adequate postdeprivation remedy was available at the time of plaintiff's loss, the deprivation of plaintiff's property does not violate due process. Accordingly, plaintiff's claim against defendant Leatherman for a deprivation of property without due process of law is frivolous. *Powell v. Ellis,* 2007 WL 2669432, at *3 (N.D. Fla. Sept. 7, 2007) (finding the inmate was not denied due process when his legal papers were destroyed because Florida's statute provided a remedy for the deprivation).

The other claim against defendant Leatherwood is for the denial of access to the courts. Plaintiff's allegations are void of any reference to an injury that he suffered as a result of the alleged destruction of his legal documents and book. That is, there is no statement about him being unable to file, or to timely file, his paperwork with a particular court and, as a result, he sustained an unfavorable ruling.

The Supreme Court in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174 (1996), ruled that an inmate must show that he has suffered an injury in order to have standing to bring a claim for denial of access to courts. *Id.* at 349, 116 S.Ct. at 2179. The required injury is

for the inmate to show that he has been frustrated or impeded in the prosecution of his conviction's direct appeal, of his habeas petition, or of his civil rights action implicating a basic constitutional right[4] and that his underlying action was nonfrivolous. *Id.* at 353-54, 116 S.Ct. at 2181-82. The underlying "claim must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury,* 536 U.S. 403, 416, 122 S.Ct. 2179, 2187 (2002). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 355, 116 S.Ct. at 2182.

In the present action, the only information before the Court is that plaintiff's state court habeas corpus petition and petition for the writ of certiorari to the United States Supreme Court were destroyed and plaintiff seeks reimbursement for a legal book. More important than the lack of information about plaintiff's injury in the respective actions is the total absence of information about these underlying actions. It is required that the underlying actions in which he allegedly sustained an injury be nonfrivolous. After considering that the alleged incident occurred on November 9, 2004 (Doc. 7 at 4), that plaintiff was convicted of robbery, first-degree, in 1997, that he is serving his corresponding life without parole sentence with no future sentence to be served, and that the nature of his destroyed documents was a petition for state habeas corpus relief and a

---

[4]The Eleventh Circuit in *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998), interpreted this statement to include "direct or collateral appeals" of criminal convictions.

federal petition for the writ of certiorari, the Court finds that the underlying action more than likely would be his state criminal conviction for first-degree robbery. However, plaintiff indicates in the complaint form that his conviction and sentence have not been invalidated. (Doc. 7 at 7). Therefore, the theorized underlying action does not satisfy the nonfrivolous requirement.

In the present action, because plaintiff is not able to demonstrate the injury required by *Lewis,* the Court finds that plaintiff's claim for denial of access to the courts is frivolous as a matter of law. *Moore v. Plaster,* 266 F.3d 928, 933 (8th Cir.) (affirming the dismissal of access-to-courts claims because plaintiff made no showing the dismissed underlying actions were nonfrivolous), *cert. denied,* 535 U.S. 1037 (2002).

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, as frivolous prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE AND ORDERED this 23rd day of January, 2008.

s/WILLIAM E.CASSADY
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be

reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        s/WILLIAM E. CASSADY
        UNITED STATES MAGISTRATE JUDGE